FILED

2014 Apr-30 PM 12:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **QUEEN E. DIAL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  2:12-CV-3989-VEH** |
| | ) |
| **NOLAND HEALTH SERVICES,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

### I.  INTRODUCTION

#### A.  Summary of Ms. Dial's Claims

Plaintiff Queen E. Dial ("Ms. Dial") initiated this job discrimination lawsuit against Defendant Noland Health Services ("Noland") arising under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 on November 30, 2012. (Doc. 1). On February 20, 2013, Ms. Dial filed a corrected amended complaint containing three separate counts. (Doc. 11 at 5-8 ¶¶ 46-62). Count One contends that Noland retaliated against her "for reporting and opposing discrimination" in violation of Title VII and 42 U.S.C. § 1981. (Doc. 11 at 5 ¶ 47).

Count Two asserts race discrimination against Noland under Title VII for holding her "to a different standard than similarly situated Caucasian nurses with

respect to attendance policies . . . ." (Doc. 11 at 6 ¶ 50). Count Three maintains interference under the Family Medical Leave Act ("FMLA") by Noland for using "approved FMLA time in [its] disciplinary policy . . . ." (Doc. 11 at 8 ¶ 62).

## B.   Summary of Pending Matters

### 1.   Rule 56 Motion

Pending before the court is Noland's Motion for Summary Judgment (Doc. 20) (the "Motion") which was filed on January 13, 2014. Noland filed its supporting materials on this same date. (Docs. 21, 22).[1] Ms. Dial opposed this Motion on February 11, 2014. (Docs. 25, 26). On February 25, 2014, Noland followed with its reply. (Doc. 60).

### 2.   Evidentiary Objection

Also pending is an Objection to Plaintiff's Declaration (Doc. 29) (the "Objection"), filed by Noland on February 26, 2014. The Objection "requests this Court [to] strike or disregard portions of Plaintiff's Declaration because they are inconsistent with her sworn testimony, are not based on personal knowledge, are hearsay, do not present best evidence, or are not understandable." (*Id.* at 1). Ms. Dial has not filed any response to this Objection.

Accordingly, the Motion and the Objection are ready for disposition. For the

---

[1] All page references to Doc. 21 correspond with the court's CM/ECF numbering system.

2

reasons explained below, the Motion is due to be granted, and the Objection is due to be termed as moot.

## II.    FACTUAL BACKGROUND[2]

Ms. Dial is a registered nurse who formerly worked for Noland at its long-term acute-care facility located in Birmingham, Alabama. Noland hired Ms. Dial on or about December 17, 2007, and ended her employment on or about January 13, 2012.

Prior to her separation from Noland, Ms. Dial was absent from work, beginning on February 22, 2011, for a (second) vascular surgery. AF No. 60.[3] After undergoing

---

[2]  Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy. Finally, due to the nature of this court's decision on summary judgment, the foregoing statement of facts is significantly limited in scope. In particular, due to the variety of claims that Ms. Dial has asserted, the court elects to develop many of the pivotal summary judgment facts as part of the applicable analyses of those claims.

[3]  The designation "AF" stands for admitted fact and indicates a fact offered by Noland that Ms. Dial has admitted in her written submissions on summary judgment, in her sworn testimony, or by virtue of any other evidence offered in support of her case. Under appendix II of the court's uniform initial order (Doc. 3) entered on December 3, 2012, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). For Ms. Dial, more specifically, this means that "[a]ny statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based." (*Id.* at 17). Consequently, whenever Ms. Dial has inadequately asserted a dispute over a fact that Noland has otherwise substantiated with an evidentiary citation, the court has reviewed the cited evidence and, if it in fact fairly supports Noland's factual assertion, has accepted Noland's fact. On the other hand, whenever Ms. Dial has adequately disputed a fact offered by Noland, the court

this scheduled medical procedure, but before returning to work, Ms. Dial was in an automobile accident. AF No. 61.

Due to complications from the automobile accident, Ms. Dial was unable to return to Noland until May 16, 2011. AF No. 62. While she was still off work, Noland informed Ms. Dial that she had exhausted her 12-week FMLA leave entitlement on April 10, 2011, and placed her on inactive status for the remainder of her time off. AF Nos. 63, 64.

Noland's Hospital Division has a written staffing policy (the "Staffing Policy") that includes a specific provision to guarantee that patients receive sufficient nursing care even on major holidays, and that the burden of working on major holidays is shouldered equitably by employees.[4] AF No. 20.1; (*see also* Doc. 22-1 at 15-16 (attaching Noland's Staffing Policy No. HD-HR-219.05 dated March 1, 2008, addressing staffing requirements generally and explaining major holiday rules

---

has reviewed the evidence cited by Ms. Dial and, if it in fact fairly supports Ms. Dial's factual assertion, has accepted Ms. Dial's version. The court's numbering of admitted facts (*e.g.*, AF No. 60) corresponds to the numbering of Noland's statement of undisputed material facts as set forth in Doc. 21 and responded to by Ms. Noland in Doc. 25. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 20.2) would indicate the second sentence of paragraph 4 of Noland's statement of facts is the subject of the court's citation to the record.

[4] Noland also has a separate written policy on absenteeism, tardiness, and clocking violations (the "ATC Policy"). (*See* Doc. 26-1 at 18-20 (attaching Noland's ATC Policy No. HD-HR-201.02 dated November 1, 2010, explaining employer's expectations and setting forth progressive disciplinary measures for violations)).

specifically)).[5]  The Staffing Policy requires employees, including full-time nurses, like Ms. Dial, to work one of three major holidays (New Year's Day, Thanksgiving, or Christmas) each year. AF No. 20.2. Noland–like other health care facilities–must provide skilled nurses for its patients even during these major holidays, when many workers would prefer to be "off" work. AF No. 21.

In an effort to address concerns over noncompliance with Noland's major holiday requirements under the Staffing Policy, Noland's Director of Clinical Services, Dorothy Reece ("DCS Reece"), implemented two new practices which took effect before the Thanksgiving 2011 holiday. (Doc. 22-6 at 7 ¶ 27).[6] First, nursing employees who called "off" for a scheduled major holiday were required to notify the Nurse Manager or DCS about the absence, not just a charge nurse. (*Id.* ¶ 27).

Second, nursing employees calling "off" for a scheduled major holiday because of illness were required to bring a doctor's excuse to substantiate the illness. *Id.* Ms. Dial maintains that she did not become aware of these verbal enhancements to Noland's Staffing Policy until reaching the summary judgment stage of this lawsuit. (Doc. 26-1 at 5 ¶ 25).[7]

---

[5]  All page references to Doc. 22-1 correspond with the court's CM/ECF numbering system.

[6]  All page references to Doc. 22-6 correspond with the court's CM/ECF numbering system.

[7]  All page references to Doc. 26-1 correspond with the court's CM/ECF numbering system.

Ms. Dial was scheduled to work on December 25, 2011. AF No. 25. Ms. Dial did not work on December 25, 2011, due to an upset stomach. AF No. 26.1; AF No. 26.2. Ms. Dial left a voice mail message with DCS Reece regarding her illness. AF No. 28.

Ms. Dial also called and reached Nurse Manager Jones before her scheduled shift. AF No. 29. Ms. Dial told Nurse Manager Jones that she could not work because she had an upset stomach. AF No. 30.

During their December 25, 2011, telephone conversation, Nurse Manager Jones informed Ms. Dial that she would be required to bring a doctor's excuse related to this absence upon her return. AF No. 32. Ms. Dial responded, "okay." AF No. 33. As of January 4, 2012, Ms. Dial had not provided the required medical excuse. AF No. 34.

After either DCS Reece's or Nurse Manager Jones' request, Ms. Dial called her gastroenterologist to make an appointment, but his office told Ms. Dial that the doctor was out of the country until mid-January. AF No. 36. Ms. Dial did not relay information about her gastroenterlogist's unavailability to DCS Reece or Nurse Manager Jones. AF No. 37.

Though she claimed she had been unable to work for several days and though she had been instructed to provide a doctor's excuse in the midst of her absence

(which extended until December 28, 2011), Ms. Dial had not seen a doctor and indicated during her deposition that, because of her nursing background, she was knowledgeable about her medical condition and capable of taking care of herself. AF No. 38.

As of January 13, 2012, Ms. Dial had still not provided the doctor's excuse that had first been requested 19 days earlier. AF No. 41. DCS Reece and Nurse Manager Jones informed Noland's Administrator (and their superior) Laura Wills ("Administrator Wills") that Ms. Dial had failed to turn in a doctor's excuse for her absence on December 25, 2011. (Doc. 22-1 at 5 ¶ 23). DCS Reece and Nurse Manager Jones further stated to Administrator Wills that they had warned Ms. Dial that not providing one would result in the termination of her employment. (Doc. 22-1 at 5 ¶ 23). While Ms. Dial admits that she was told about needing to produce a doctor's excuse, she denies ever being advised that a failure to do so would result in her dismissal from Noland. (*See* Doc. 25 at 3 ¶ 37 ("Prior to being terminated, Dial was not informed that her employment hinged on obtaining note from the MD.")).

On the basis of her failure to obtain a doctor's excuse, Administrator Wills approved the recommendation of DCS Reece and Nurse Manager Jones to fire Ms. Dial. (*Id.* ¶ 24). On January 13, 2012, DCS Reece and Nurse Manager Jones met with Ms. Dial to explain their recommendation that she be discharged. (*Id.* ¶ 25). At this

meeting, DCS Reece and Nurse Manager Jones brought with them a "Record of Conference" which noted several unexcused absences and days of tardiness, referenced her failure to work a major holiday, and stated in part:

> Employee record demonstrates pattern of failure to follow attendance policy and staffing policy for holidays: she has not demonstrated a sustainable improvement after counseling or after Performance Evaluations therefore our recommendation is discharge of the employee or termination.

(Doc. 26-1 at 16). Ms. Dial indicated in a handwritten response on this document that she did "not agree [with] all the above information held against me." *Id.*

After this meeting, Ms. Dial requested that Administrator Wills review the recommended termination. AF No. 44. On January 27, 2012, Administrator Wills met with Ms. Dial to conduct the requested review. (Doc. 22-1 at 5 ¶ 26). Administrator Wills memorialized her decision to uphold the recommended action in a letter to Ms. Dial dated February 6, 2012:

> On Friday, January 13, 2012, you received a Record of Conference where termination was recommended. Per Noland's policy you were referred to the Administrator for final determination. We were able to meet your request on Friday, January 27, 2012.
>
> I have reviewed your Record of Conference as well as the information you presented at our meeting. I upheld the original termination decision, to be effective, January 13, 2012, the date of the conference.

(Doc. 22-1 at 20).

8

Ms. Dial filed an EEOC charge ("Current Charge") about her dismissal on March 19, 2012. (Doc. 7-1 at 2).[8]

Prior to that adverse employment action, Ms. Dial had filed two EEOC charges ("Earlier Charges")[9] against Noland and a related federal lawsuit in December 2010 entitled *Queen Dial, et al. v. Noland Health Services*, No. 2:10-CV-3548-KOB (the "First Lawsuit"),[10] asserting claims of race discrimination and retaliation. On May 1, 2012, the magistrate judge to whom the case had been referred filed a report and recommendation recommending that Noland be granted summary judgment on Ms. Dial's First Lawsuit. AF No. 75. On September 10, 2012, the district judge adopted the magistrate judge's report and recommendation, and granted summary judgment to Noland on Ms. Dial's First Lawsuit. AF No. 76.

## III.   STANDARDS

### A.   Summary Judgment Generally

Summary judgment is proper only when there is no genuine issue of material

---

[8]  All page references to Doc. 7-1 correspond with the court's CM/ECF numbering system.

[9]  Ms. Dial filed her first EEOC charge against Noland on June 26, 2009, and her second one on April 22, 2010. AF Nos. 69, 70; (*see also* Doc. 22-5 at 17, 18 (copies of respective charges).

[10]  (*See* Doc. 1 in 2:10-CV-3548-KOB) (N.D. Ala. Dec. 21, 2010). On February 2, 2011, the court severed the First Lawsuit into ten separate actions. (Doc. 16 in 2:10-CV-3548-KOB); (*see also* Doc. 22-12 at 2-3 (attaching copy of order severing First Lawsuit)). Upon severance, Ms. Dial's First Lawsuit was renumbered and assigned to a different judge. (*See* Doc. 1 in 2:11-CV-0374-SLB) (N.D. Ala. Feb. 3, 2011) (copy of severance order entered in 2:10-CV-3548-KOB).

fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Finally, "[i]f the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d at 1274 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

## B.    Employment Discrimination Generally

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination or retaliation. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530

10

U.S. 133, 143,  120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) ("Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [or retaliated] against the plaintiff remains at all times with the plaintiff.'" (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981))); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1184 (11th Cir. 1984) ("A Title VII disparate treatment plaintiff must prove that the defendant acted with discriminatory purpose." (citing *Clark v. Huntsville City Board of Education*, 717 F.2d 525, 529 (11th Cir. 1983))).

Although the Supreme Court has established the basic allocation of burdens and order of proof in a disparate treatment case, *see, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817,  36 L. Ed. 2d 668 (1973); *Burdine*, *supra*; *Desert Palace v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 56 L. Ed. 2d 84 (2003), that framework applies only in cases in which there is no direct evidence of discrimination. *See Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987) ("The *McDonnell Douglas-Burdine* patterns of proof were designed to ease the evidentiary burdens on employment discrimin[a]tion plaintiffs, who rarely are fortunate enough to have access to direct evidence of intentional discrimination." (citing *Thornbrough v. Columbus and Greenville R.R.*, 760 F.2d 633, 638 (5th Cir.

11

1985), *abrogated on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 40 (1993)).[11]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though the defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05, 93 S. Ct. at 1824-26; *Burdine*, 450 U.S. at 252-54, 101 S. Ct. at 1093-94; *Desert Palace*, 539 U.S. at 101-02, 123 S. Ct. at 2155.

## C.    Evidentiary Rulings

"All evidentiary decisions are reviewed under an abuse-of-discretion standard."

---

[11] As the Eleventh Circuit has explained, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (citing *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 610-11 (11th Cir. 1987)). Ms. Dial relies upon the circumstantial evidence model. (*See, e.g.,* Doc. 25 at 22 ("Racial discrimination claims based on circumstantial evidence are evaluated under the *McDonnell Douglas* burden shifting framework.")).

*See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 F. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Moreover, as the Eleventh Circuit has made clear, not every incorrect evidentiary ruling constitutes reversible error:

> Auto-Owners' second argument is that it is entitled to a new trial on the basis of what it describes as a number of erroneous evidentiary rulings by the district court. Evidentiary rulings are also reviewed under an abuse of discretion standard. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989). Moreover, even if Auto-Owners can show that certain errors were committed, the errors must have affected "substantial rights" in order to provide the basis for a new trial. *See* Fed. R. Evid. 103(a). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry*, 734 F.2d at 1446. *See also Allstate Insurance Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988).

*Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993). Therefore, even the existence of many evidentiary errors does not guarantee an appealing party relief from an adverse final judgment. Instead, such erroneous rulings by a district court must "affect the substantial rights of the parties" in order for reversible error to occur.

## IV.    ANALYSIS

### A.    Rule 56 Motion

#### 1.    Count One for Title VII Retaliation[12]

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action, and (3) a causal connection between the two. *See, e.g.*, *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) ("It is well established in this circuit that to successfully allege a *prima facie* retaliation claim under either Title VII, the ADEA or the ADA, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." (citing *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001))).

Additionally, in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Supreme Court abrogated prior circuit law, including that of the Eleventh Circuit, limiting anti-retaliation claims under Title VII to claims involving actions that are related to employment or that occur at the

---

[12]  Neither party has suggested that the court analyze Ms. Dial's Title VII retaliation claim differently than the one she has asserted under § 1981. Further, the court finds that no such distinction applies. *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257-58 (11th Cir. 2012) (analyzing Title VII retaliation and § 1981 retaliation contemporaneously).

14

workplace. *Id*. at 2409. Rather, post-*Burlington Northern*, the recognized elements of a claim of retaliation under Title VII or § 1981 are that the plaintiff: (1) "engaged in statutorily protected activity"; (2) "suffered a materially adverse action"; and (3) "some causal relation between the two events." *Butler v. Alabama Dept. of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008) (internal quotation marks omitted) (quoting *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)).

To establish the causal connection prong, a plaintiff need only show that the protected activity and the adverse employment action "were not wholly unrelated." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case [of retaliation] uniformly hold that the temporal proximity must be 'very close[.]'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). Furthermore, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *University of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013).

Ms. Dial asserts that she was discharged on January 13, 2012, in retaliation for

giving a deposition in her First Lawsuit related to her Earlier Charges. As Ms. Dial

alleges in her complaint:

> In March 2009, Dial, along with other eight registered nurses
> employed by Noland filed a case alleging employment discrimination.
> The cases were separated and Dial continued individually.
>
> In December 2011, Dial was deposed in the case and made known
> her opposition to race discrimination in employment.
>
> In January 2012--after giving her deposition--Queen was
> terminated allegedly due to her attendance record.

(Doc. 11 ¶¶ 14-16 (footnote omitted)).

In support of its Motion, Noland contends that Ms. Dial cannot establish a

*prima facie* case of retaliation for two reasons. One, Ms. Dial's Earlier Charges and

the filing of her First Lawsuit are too remote in time to establish a causal connection.

Two, while the temporal gap between her deposition and her discharge is likely

sufficiently close, the record lacks any evidence that Ms. Dial's supervisors were

aware of her deposition when they decided to fire her. *See Gupta v. Fla. Bd. of

Regents*, 212 F.3d 571, 590 (11th Cir.2000), *abrogated on other grounds by

Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed.

2d 345 (2006) ("To establish causation, a plaintiff must show that: (1) the

decisionmakers were aware of his protected conduct and . . . .").

Ms. Dial concedes lack of knowledge on the part of her supervisors about her

deposition, but counters that they were aware of her engaging in protected activity at an earlier time:

> Defendant claims that because Jones and Reese were unaware of Dial's Deposition. However, both Jones and Reese were aware of Dial's protected EEO activity. In on [sic] December 2, 2011, both Jones and Reese were copied on a letter sent to Queen Dial that stated, "I assure you the above referenced activity is in no relation to your EEOC charge" [Ex. 13 Heffner letter to Dial] Dial had copied the same managers on her letter of October 28, 2011, stating that she contended she experiencing hostility from her supervisor Reese and wondered if it was because of "the EEOC charges". [Ex. 12 Dial Letter October 28, 2011] Whether Jones or Reece knew of Dial's deposition is not dispositive, as both supervisors who terminated Dial were undisputably reminded in December 2011 Dial perceived she was being retaliated against and held to a harsher standard than her white co-workers because of EEO activity.

(Doc. 25 at 17).

Thus, in her opposition, Ms. Dial has abandoned any theory that her Earlier Charges, her First Lawsuit, or her December 2011 deposition was the triggering protected activity culminating in her discharge. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller Int'l, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("We decline to exercise our discretion to entertain this argument which was not fairly presented to the district court."); *Coal. for the Abolition of*

17

*Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Hudson v. Norfolk S. Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); *cf. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"); *McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint).

Instead, Ms. Dial now points to correspondence written by her on October 28, 2011 (Doc. 26-3 at 11-12),[13] about her Earlier Charges and a related response dated December 2, 2011, as evidence to prima facially support her retaliation claim. However, neither the October 28, 2011, nor the December 2, 2011 letters are ever mentioned in her corrected amended complaint.

Because Count One of Ms. Dial's complaint lacks any allegations that her protected activity constituted the letter that she sent on October 28, 2011, referencing

---

[13]  All page references to Doc. 26-3 correspond with the court's CM/ECF numbering system.

18

her Earlier Charges, summary judgment on that type of amended retaliation claim, which is not procedurally before the court, is appropriate. The Eleventh Circuit has made it unmistakably clear that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). *Gilmour* dealt with a plaintiff who was attempting to assert a new claim at the summary judgment stage. *Gilmour*, 382 F.3d at 1314-15.

Additionally, a more recent decision by the Eleventh Circuit cites to *Gilmour* and confirms that a district court's consideration of <u>any critical amendment</u> asserted merely as part of the briefing process is disfavored.

> The current practice in some district courts—especially in the summary judgment setting—is to ignore what the respective parties alleged in their complaint and answer and to consider their claims and defenses as depicted in the memoranda they filed in support of or in opposition to a motion for summary judgment. As is the situation here, the claims and defenses presented in the memoranda supporting or opposing summary judgment are not presented in the complaint and answer with the specificity required by the Federal Rules of Civil Procedure and the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); rather, they are presented in a shorthand fashion. The result is that on appeal we have difficulty in determining whether the district court, in granting summary judgment, ruled on the claims and defenses as stated in the complaint and answer or as stated in the memoranda submitted to the court on summary judgment, as if the pleadings had been amended by implied consent.

We encountered this dilemma most recently in *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S. Ct. 856, 184 L. Ed.2 d 656 (2013). <u>There, in their motion for summary judgment, the plaintiffs sought to eliminate a critical deficiency in the allegations of their amended complaint by including additional facts</u>. The defendants did not object to this tactic on the ground that the plaintiffs were, in effect, seeking to amend their complaint. And the district court, in ruling on the sufficiency of the complaint, appeared to have considered the additional facts as if they had been alleged in the complaint. In affirming the district court's dismissal of the claim at issue, <u>we refused to consider these additional facts, citing precedent that precludes a plaintiff from amending its complaint "through argument at the summary judgment phase of proceedings."</u> *Id.* at 1258 n. 27. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

This court's precedent foreclosed Well-Come's attempt to amend its complaint at the summary judgment stage without seeking leave of court pursuant to Rule 15(a)(2). Accordingly, the District Court should have disposed of Well-Come's claim with a statement that Well-Come failed to establish that ASRRG and ASIS issued a commercial general liability policy and excess/umbrella liability policy to Flintlock LLC, as alleged in paragraphs 6 and 7 of its complaint. We affirm the court's judgment on that ground. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010) ("This court may affirm a decision of the district court on any ground supported by the record.").

*Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28

(11th Cir. 2013) (emphasis added).

Thus, *Gilmour* and *Flintlock* procedurally foreclose Ms. Dial from belatedly

attempting to amend her complaint in any critical manner through her brief, her

deposition, and/or her declaration. Further, Ms. Dial has abandoned the merits of the retaliation claim specifically pleaded in her complaint.

Alternatively, Noland contends that even if the court accepts Ms. Dial's belated efforts to amend her retaliation claim and offer her October 28, 2011 correspondence[14] as *prima facie* proof of her protected expression under Title VII's opposition clause,[15] the claim would, nevertheless, still fail for either good faith belief or temporal reasons connected to the timing of her discharge. (Doc. 28 at 5-6). Turning to the good faith belief requirement, the court agrees with Noland that its absence means that Ms. Noland cannot use her letter to substantiate her retaliation claim. *See Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997) ("[A] plaintiff can establish a *prima facie* case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.").

In particular, in her letter dated October 28, 2011, Ms. Dial speculates that the write up she received on October 25, 2011, and another write up that occurred with

---

[14] Because a letter authored by someone else cannot constitute protected activity on the part of Ms. Dial, the court analyzes the cognizable nature of Ms. Dial's October 2011 correspondence only.

[15] Because her internal complaint about alleged retaliatory treatment by Noland in the form of unfounded write ups predates the filing of her Current Charge with EEOC on March 19, 2012, Ms. Dial's Title VII retaliation claim is opposition-based as opposed to participation-based.

an unspecified date were done so in retaliation for her Earlier Charges asserted against Noland. However because those Earlier Charges (occurring on June 26, 2009, and April 22, 2010) predate her write ups by well over one full year (28 months and 18 months as measured by October 25, 2011, respectively), Ms. Dial could not have reasonably believed that there was any actionable causal connection between her Earlier Charges and the subsequent written reprimands. *See Breeden*, 532 U.S. at 273, 121 S. Ct. at 1511 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case [of retaliation] uniformly hold that the temporal proximity must be 'very close[.]'" (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001))); *see also Breeden*, 532 U.S. at 268, 121 S. Ct. at 273-74 (citing with approval authorities finding 3-month and 4-month gaps to be too long and holding that "[a]ction taken (as here) 20 months later suggests, by itself, no causality at all"). Further, in her October 2011 correspondence Ms. Dial does not imply, much less expressly indicate that, she relies upon any evidence other than purported temporal proximity when complaining about suspected retaliation by Noland in issuing the disputed reprimands.

Accordingly, for these independent procedural and substantive reasons, the Motion is due to be granted as to Count One of Ms. Dial's corrected amended

complaint asserting Title VII/§ 1981 retaliation.

## 2.     Count Two for Title VII Race Discrimination

Regarding discriminatory disciplinary claims, the Eleventh Circuit has fashioned the following standard:

> [W]e hold that, in cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.

*Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) (emphasis added); *see also*

*Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980) ("With respect to

discharge for violation of work rules, the plaintiff must first demonstrate by a

preponderance of the evidence either that he did not violate the rule or that, if he did,

white employees who engaged in similar acts were not punished similarly.")

(emphasis added).[16]

Because Ms. Dial has admitted that she did not work on the major holiday of

Christmas as scheduled and that she did not subsequently provide a doctor's excuse

for that absence, to satisfy a *prima facie* case, Ms. Dial must demonstrate the

---

[16]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

existence of other employees outside of her protected class who received more favorable treatment than she by Noland despite committing similar infractions. In this regard, Ms. Dial has identified three potential comparators. The court addresses each one below.

To the extent that Ms. Dial has attempted to use another nurse, Amy Horsley ("Ms. Horsley"), as a valid comparator because of their similar histories of tardiness and/or non-holiday absences from work, those efforts are unavailing. More specifically, Ms. Dial and Ms. Horsley are not similarly situated because there is no evidence in the record that Ms. Horsley failed to report to work on a major holiday for which she was scheduled (or neglected to provide medical documentation for the missed day after being expressly advised to do so), an absence deemed to be more critical to Noland than one occurring on a non-major holiday. (*See, e.g.*, Doc. 22-6 at 7 ¶ 28 ("During my time as DCS at [Noland], any nursing employee calling off sick on their major holiday must call in to the Nurse Manager or myself (the DCS), and must provide a doctor's excuse"); Doc. 22-1 at 4 ¶ 19 ("Ms. Reece stated that she would require nursing employees to call into her or Ms. Jones if they had to be absent for their scheduled major holiday, and–if the absence was for medical reasons–that the medical need would have to be substantiated by a doctor's excuse."); *id.* at 9 ¶ 48 ("My understanding of Reece's holiday practices was that they were targeted to

nursing employees–RNs, LPNs, and PCTs–who provided direct patient care.")); *cf.*
*Pugh v. Heinrich*, 695 F. Supp. 533, 543 (M.D. Fla. 1988) ("Defendant notified
Plaintiff that she would need to provide a doctor's statement for absence which
occurred in conjunction with a scheduled day off or holiday."), *aff'd without opinion*,
933 F.2d 1020 (11th Cir. 1991); *id.* ("Plaintiff has presented no competent evidence
that any other employee was similarly situated, having such a record of taking days
off, particularly sick days, just before or after a day off or a holiday."); *cf. also*
*Anderson v. WBMG-42*, 253 F.3d 561, 565 n.2 (11th Cir. 2001) ("The Supreme Court
has observed that 'precise equivalence in culpability between employees is not the
ultimate question[,]' and, therefore, has directed the emphasis of the fact finder's
inquiry to the question of 'comparable seriousness.'" (quoting *McDonald v. Santa Fe
Trail Transportation Co.*, 427 U.S. 273, 283 n.11, 96 S. Ct. 2574, 2580 n.11, 49 L.
Ed. 2d 493 (1976))); *Hollingsworth v. Henry County Med. Ctr. Ems*, No. 05-1272 B,
2007 U.S. Dist. LEXIS 42701, at *15 (W.D. Tenn. June 12, 2007) ("There is no
evidence they [unlike the plaintiff] walked off the job <u>on a holiday weekend</u> leaving
a co-worker just coming off a 24-hour shift to find a replacement for them after
vocally disagreeing with an alleged employer policy and declaring their willingness
to 'suffer the consequences.'") (emphasis added).

In fact, on summary judgment, Noland, through Administrator Wills, has

disavowed Ms. Dial's non-holiday absences and tardiness as factors in the final decision to fire her. (*See, e.g.*, Doc. 22-1 at 4 ¶ 18 ("I decided to terminate Queen Dial because she violated [Noland]'s policy requiring full-time employees to work one major holiday (New Year's, Thanksgiving, or Christmas) each year."); *id.* at 5 ¶ 24 ("On the basis of her failure to provide a doctor's excuse to substantiate her absence on a major holiday, I approved Ms Reece and Ms. Jones to recommend Ms. Dial's termination."); *see also id.* ("I did not review the Record of Conference recommending Ms. Dial's termination before it was given to Ms. Dial.")).

Instead, Noland relies exclusively on Ms. Dial's major holiday infraction. Because Ms. Horsley had no record of a holiday infraction and because Noland does not rely upon tardiness or other missed days to support its decision to dismiss Ms. Dial, Ms. Horsley is not a suitable comparator. The foregoing analysis applies also to Ms. Dial's suggestion that Caron Magouryk ("Ms. Magouryk") is a suitable comparator.

The court might have reached a different conclusion regarding Ms. Dial's reliance upon Noland's more favorable treatment of non-nursing employee Freda Body ("Ms. Body"), who formerly worked as a unit secretary for Noland on an as-needed basis and who also missed a major holiday for which she was scheduled to work without submitting any medical excuse, and yet was not fired for that offense.

However, because Ms. Dial's corrected amended complaint alleges disparate treatment premised only upon Noland's more favorable treatment of Ms. Horsley (Doc. 11 at 5 ¶ 27) and other "similarly situated Caucasian <u>nurses</u>" (Doc. 11 at 6 ¶ 50 (emphasis added)), the court does not consider the sufficiency of this potential *prima facie* evidence, because Ms. Dial is procedurally forbidden from attempting to amend her complaint in such a critical fashion to include Ms. Body as an actionable comparator by way of her opposition brief. *See Gilmour* and *Flintlock*, *supra*.

Having addressed the inadequacies of Ms. Dial's comparator evidence, the court observes that Ms. Dial has not offered any other circumstantial evidence suggesting racial discrimination with respect to the decision to fire her for an admitted violation of Noland's major holiday practices implemented under the Staffing Policy,[17] *e.g.*, racially derogatory comments uttered by DCS Reece, Nurse Manager Jones, or Administrator Wills. *Cf. Burke-Fowler v. Orange County*, 447 F.3d 1319, 1325 (11th Cir. 2006) ("Because she failed to establish valid comparators and presented no other circumstantial evidence suggesting racial discrimination,

---

[17] The fact that Ms. Dial claims she was unaware of Noland's additional major holiday measures is of no consequence because when she spoke to Nurse Manager Jones about her absence on December 25, 2011, Ms. Dial has admitted that she understood from speaking with Nurse Manager Jones that she would need to provide a doctor's excuse upon returning to work (AF Nos. 32, 33), and yet Ms. Dial never complied with this requirement. The record lacks proof of nurses who acted similarly in response to a supervisory directive related to the Staffing Policy, and yet were retained by Noland.

Burke-Fowler did not establish a *prima facie* case of race discrimination." (citing *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)). Therefore, the Motion is due to be granted on Count Two because Ms. Dial has not established a *prima facie* case of race discrimination.

Alternatively and assuming the satisfaction of a *prima facie* case, her discriminatory discharge claim still fails due to Ms. Dial's inability to demonstrate pretext in the decision to discharge her. More specifically, because Ms. Dial lacks suitable comparator evidence and relies upon no other or, at best, only weak proof of pretext, the record lacks "'evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions.'" *MacPherson v. University of Montevallo*, 922 F.2d 766, 776 (11th Cir. 1991) (quoting *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1998)); *see also Reeves*, 530 U.S. at 148, 120 S. Ct. at 2109 ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a <u>weak</u> issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.") (emphasis added).

Accordingly, the Motion is due to be granted as to Count Two of Ms. Dial's

corrected amended complaint asserting discriminatory discharge on the basis of race due to her inability to satisfy a *prima facie* case, much less demonstrate pretext.

### 3.   Count Three for FMLA Interference

As the Eleventh Circuit has summarized the scope of protections afforded to covered employees under the FMLA:

> Among the substantive rights granted by the FMLA to eligible employees are the right to "12 workweeks of leave during any 12–month period .... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1), and the right following leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position, 29 U.S.C. § 2614(a)(1). To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: <u>interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act</u>, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees ... who have used FMLA leave."). To state a claim of interference with a substantive right, <u>an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied</u>. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353–54 (11th Cir. 2000); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999).

*Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206-07 (11th Cir. 2001) (footnote omitted) (emphasis added).

Ms. Dial alleges that, in "assessing [her] for termination," Noland improperly

"listed a number of absences that should have been covered by FMLA time including

[] but not limited to February 25, 2011, March 2, 2011, March 6, 2011,  [] March 7,

2011[,] July 8, 2011, and July 13, 2011." (Doc. 11 ¶ 17). Ms. Dial further asserts that,

"Noland's use of approved FMLA time in [its] disciplinary policy constitutes

interference . . ." (*Id.* ¶ 62).

> In its Motion, Noland contends:

> Plaintiff has not identified any benefit which she was denied. Every time she requested FMLA leave, it was granted. After taking block and intermittent FMLA leave, she was reinstated. Even when she exhausted her FMLA leave, she was not terminated, but provided additional leave. . . . Plaintiff's FMLA claim is based exclusively on the fact that Reece and Jones erroneously included the dates of four FMLA-designated absences (occurring nine to ten months earlier) on their recommendation for Dial's termination.

(Doc. 21 at 29-30).

> In opposition, Ms. Dial does not dispute that when she sought FMLA leave in

connection with her second vascular surgery, Noland approved her request. Ms. Dial

also does not contest that she was returned to her same nursing position on May 16,

2011, after exhausting her FMLA leave on April 11, 2011, and being placed on

inactive status. Therefore, Ms. Dial has not and cannot identify any FMLA right that

Noland denied her from exercising.

> Noticeably absent from Ms. Dial's opposition is any case authority which

substantiates that she has adduced sufficient evidence to support an FMLA interference claim based merely upon the inaccuracies concerning her absences from work contained in the Record of Conference recommending the termination of her employment, especially when the record otherwise establishes that the final discharge decision <u>was not premised upon any of these disputed days</u>. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

In fact, the summary judgment record conversely substantiates that, in restoring Ms. Dial to her former position post-surgery and car accident, Noland actually gave her more protection than she was legally entitled to receive under the FMLA. *Cf. McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999) (affirming summary judgment against plaintiff challenging her post-FMLA leave demotion because she "was absent for more than the protected period of time [and], [therefore,] . . . did not have a right to be restored to her prior or similar position.").

Furthermore, to the extent that Ms. Dial no longer relies on any of the FMLA-related dates alleged in her corrected amended complaint and, instead, points to

31

absences in December 2011 listed on the Record of Conference (*see, e.g.*, Doc. 25 at 29 ("By not considering the Dial's December absence due to hemodialysis side effects is another way Noland interfered with Dial's FMLA rights.")), she is procedurally forbidden from attempting to amend her complaint by way of her opposition brief. *See Gilmour* and *Flintlock*, *supra*.

Accordingly, for these independent substantive and procedural reasons, the Motion is due to be granted as to Count Three of Ms. Dial's corrected amended complaint asserting FMLA interference.

### B.    Objection

Because the court concludes that its rulings on summary judgment are appropriate with or without consideration of the challenged portions of Ms. Dial's declaration, the Objection is due to be termed as moot.

## V.    CONCLUSION

For all the reasons stated above, Noland's Motion is due to be granted, and Ms. Dial's lawsuit is due to be dismissed with prejudice. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 30th day of April, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge